IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TROY STEWART

     v.                   :   Civil Action No. DKC 11-3605

MORGAN STATE UNIVERSITY, et al.

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this discrimination case is the motion for summary judgment filed by Defendants Morgan State University ("Morgan State"), Dallas R. Evans, Warren Hayman, Martin R. Resnick, T. Joan Robinson, Benjamin Welsh, and David Wilson.  (ECF No. 34).  Also pending is Defendant's motion to strike Plaintiff's opposition to the summary judgment motion.  (ECF No. 37).  The issues have been fully briefed, and the court now rules, no hearing being deemed necessary.  Local Rule 105.6.  For the following reasons, Defendants' motion for summary judgment will be granted. Defendants' motion to strike will be denied.

## I.  Background

### A.  Factual Background

Plaintiff Troy Stewart, proceeding *pro se*, claims that he was discriminated against on the basis of race when he was dismissed from his graduate program at Morgan State, a historically-black college.  Plaintiff brings claims for race

discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, breach of contract, and constitutional violations pursuant to 42 U.S.C. § 1983.

In the spring semester of 2010, Plaintiff Troy Stewart, an African-American male, enrolled at Morgan State University, where he began pursuing an Ed.D Degree in Urban Educational Leadership. (ECF No. 36, at 4-5). The graduate program in which Plaintiff enrolled required Ed.D candidates to complete a minimum of sixty credit hours, with an overall 3.0 grade point average, with the grade of "C" as the minimum acceptable grade. (ECF No. 12-3, at 8)[1]. The program requirements indicate that "[a] student who receives two C's will be dismissed from the [Ed.D] program." (*Id.*).

Plaintiff was enrolled in three traditional lecture classes and one internship course in the spring semester of 2010. (ECF No. 36-1, at 2). Dr. Benjamin Welsh, a Caucasian male, served as Plaintiff's supervisor for his internship course, EDAD 603, Administration and Social Policy, and taught two other courses in which Plaintiff was enrolled: EDAD 601, Theories and Practices of Urban Educational Leadership, and ASLP 602,

---

[1] ECF No. 12 is Plaintiff's opposition to an earlier motion to dismiss, and he attached documents upon which he relies in pursuing his claims. His opposition to the motion to summary judgment generally refers to the complaint and court documents and references the documents attached to ECF No. 12.

Philosophy of Education.  (ECF No. 12-3, at 4).  At the outset of the internship, Dr. Welsh and Plaintiff both signed a "Statement of Agreement" on January 27, 2010, outlining the objectives and requirements of the internship.  (ECF No. 12-2). The Statement of Agreement states:

> Internship                Objectives          (Learning Experiences):
>
> To identify, research, and get an idea on how many grants are out here for at-risk youths! I will dedicate at least 30 hours per week for 7 weeks, which will be equivalent to 210 hours of grant research experience completing my first internship experience in seven weeks. This research could help in identifying a future grant.
>
> I will perform and conduct independent research from my home-based location and research libraries. I will search federal and state databases to get an idea of the types of grants that are being offered. I will look at sites such as http://www.grants.gov/.  This will give me an idea of what is being offered in the field of education for at-risk youths. I will consult with Dr. Benjamin Welsh, my on-site supervisor. I will consult with him during my internship about my findings.
>
> This will give me experience in searching, identifying, and researching grants. It will also show me the current social policy grants mainly in the field of education. This internship will give me further understanding of federal and state grants.

(ECF No. 12-2, at 2).

Difficulties and differences of opinion developed in Plaintiff's relationship and interactions with Dr. Welsh.

Eventually, Plaintiff altered the focus of his internship and appealed some of his grades.   After the grades were upheld, which included two "C" grades and an incomplete for the internship, Plaintiff was dismissed from the program by November 2010.

### B.   Procedural Background

Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC").   The EEOC made no findings and issued him a right to sue letter on October 12, 2011.   (ECF No. 1-1).   Plaintiff filed a complaint on December 15, 2011 against Morgan State University; Benjamin Welsh, associate professor in the Urban Educational Leadership Doctoral program; Dallas Evans and Martin Resnik, members of Morgan State's Board of Regents; Warren Hayman, interim coordinator of the Urban Educational Leadership Doctoral Program; Joan Robinson, Provost and Vice President for Academic Affairs; and David Wilson, President. (ECF No. 1).   Plaintiff's complaint alleged counts for employment discrimination and retaliation under Title VII; violation of constitutional rights under 42 U.S.C. § 1983; and breach of contract.

On March 1, 2012, all of the Defendants, except Dallas Evans, moved to dismiss (ECF No. 10); Mr. Evans moved to dismiss on January 11, 2013 (ECF No. 17).   The motions to dismiss were granted in part by memorandum opinion and order issued on

February 1, 2013.  The claims remaining in this case include: (1) Title VII claims against Morgan State; (2) breach of contract claims for injunctive relief; and (3) Section 1983 claims against the individual Defendants.  Defendants answered on February 18, 2013, Plaintiff filed a corrected complaint on March 29, 2013, and Defendants filed an amended answer on April 11, 2013.  (ECF Nos. 22, 24, & 25).

Defendants moved for summary judgment on October 11, 2013 and Plaintiff opposed the motion on October 30, 2013.  (ECF Nos. 34 & 36).  Defendants subsequently filed a motion to strike Plaintiff's opposition, suspecting that Mr. Stewart was using a "ghost attorney."  (ECF No. 37).  Plaintiff opposed this motion. (ECF No. 38).[2]

## II.  Standard of Review

Summary judgment is governed by Fed.R.Civ.P. 56(a) which provides that: "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

---

[2] Defendants' motion to strike Plaintiff's opposition will be denied.  Although Defendants argue that Plaintiff's opposition includes significant legal arguments and, consequently, an attorney must have drafted it, many of the cases cited in the opposition duplicate those cited in the February 1, 2013 memorandum opinion adjudicating Defendants' earlier-filed motion to dismiss.  (ECF No. 37-1).  Moreover, Plaintiff correctly points out that the cases he cited are matters of public record and accessible to *pro se* litigants. Plaintiff avers that he is self-represented.  (ECF No. 38).  The motion to strike will be denied.

The Supreme Court of the United States has clarified that this does not mean that any factual dispute will defeat the motion: "[b]y its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). "The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must set forth specific facts showing that there is a genuine issue for trial." *See Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (*quoting* former Fed.R.Civ.P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in [his] favor without weighing the evidence or assessing the witness' credibility." *See Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *See Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (*quoting Drewitt v. Pratt*, 999 F.2d

774, 778-79 (4th Cir. 1993) and *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## III. Analysis

### A.   Title VII Claims

Morgan State first argues that Title VII only governs employment relationships, and Plaintiff was not an employee at Morgan State within the meaning of Title VII. (ECF No. 34-1, at 7-8). Alternatively, Morgan State contends that Plaintiff's dismissal was a purely academic decision. (ECF No. 34-1, at 7).

#### 1.   Employment Status

Title VII makes it unlawful for an employer to discriminate against an individual in his employment based on that person's race.[3]  The statute defines employer as "a person engaged in an industry affecting commerce who has fifteen or more employees" and "any agent of such person." 42 U.S.C. § 2000e-2(a). Title VII defines an employee as "an individual employed by an employer." 42 U.S.C. § 2000e(f). The Fourth Circuit has adopted a two-part test to determine whether an individual constitutes an employee for purposes of Title VII. *See Haavistola v. Cmty. Fire Co. of Rising Sun, Inc.*, 6 F.3d 211 (4th Cir. 1999). First, the putative employee must demonstrate the existence of an employment relationship. *Bender v. Suburban*

---

[3]  Although Plaintiff asserts in his complaint that he was also discriminated against on the basis of sex, religion, national origin, and age, (ECF No. 1, at 9), Plaintiff offers no factual support for these claims.

*Hosp.*, 998 F.Supp. 631, 634 (D.Md. 1998) (finding it to be "axiomatic that a plaintiff must allege the existence of an employment relationship in order to state a Title VII claim."). Specifically, the employee must demonstrate that compensation was received in exchange for the service provided to the employer. *Graves v. Women's Prof'l Rodeo Ass'n, Inc.*, 907 F.2d 71, 73 (8th Cir. 1990) ("Central to the meaning of [employee] is the idea of compensation in exchange for services: an employer is someone who pays, directly or indirectly, wages or a salary or other compensation to the person who provides services - that person being the employee."). Second, after compensation is proven, employment status "is properly determined by analyzing the facts of each employment relationship under a standard that incorporates both the common law test derived from principles of agency and the so-called 'economic realities' test." *Haavistola*, 6 F.3d at 220 (citation omitted). "[U]nder the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished." *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 751 (1989). After determining control over the putative employee, courts turn to the "economic realities" test, where "employees are those who as a matter of economic reality are dependent upon the business to which they render service."

*Haavistola*, 6 F.3d at 220 (*quoting Bartels v. Birmingham*, 332 U.S. 126, 130 (1947)).

Morgan State contends that Plaintiff did not receive compensation because he was not paid for researching grants for the internship course and "was not paid in any other capacity." (ECF No. 34-1, at 7). As support, Morgan State cites to an affidavit from Armada Grant, its Director of Human Resources: "[t]here is no record that MSU hired Troy Stewart for any purpose during the time period of August 2010 through June 2011, and there is no record of payments being made to Troy Stewart, as an employee or grant funded staff." (ECF No. 34-3 ¶ 6). Morgan State also asserts that Plaintiff was not an employee because "it is undisputed that any internship research conducted by Mr. Stewart did not benefit the university . . . Mr. Stewart's internship and coursework were only for academic credits." (ECF No. 34-1, at 6-7). Plaintiff counters that he "served a unique dual role, as both student and employee at Morgan State." (ECF No. 36-1, at 11). Plaintiff treats the January 27, 2010 "Statement of Agreement" as a contract, stating that "[f]or the internship Plaintiff entered into a separate and distinct employment contract with Defendant whereby Plaintiff, in exchange for college credit found federal and state grants that would directly benefit MSU and the programs at the University." (ECF No. 36-1, at 2). He points to college credit

and training as "compensation" for purposes of establishing an employment relationship under Title VII.

The Fourth Circuit has held that receiving a paycheck is not a condition precedent to being deemed an employee under Title VII. *Haavistola*, 6 F.3d at 221-22 ("[b]ecause compensation is not defined by statute or case law, we hold that it cannot be found as a matter of law."). Furthermore, whether Morgan State actually benefited from Plaintiff's research efforts is irrelevant, as Plaintiff has alleged that his efforts were geared toward aiding Morgan State in finding a grant. Accordingly, the fact that Plaintiff was not on Morgan State's payroll as an employee and did not receive monetary compensation during his internship does not – in and of itself – disqualify him as an "employee" for purposes of Title VII, and summary judgment will not be granted on this basis.[4]

## 2. Race Discrimination

Plaintiff was ultimately dismissed from his internship, the only potential employment aspect of the academic program, because he failed to maintain the required academic standing. He contends that he received two grades of "C" and an "incomplete" in the internship for discriminatory reasons. Although neither party discusses the legal standard for Title

---

[4] Morgan State has not argued that Plaintiff fails to prove employment under the common-law agency or economic realities prongs.

VII claims, a plaintiff may prove discrimination by presenting direct or circumstantial evidence of intentional discrimination, or he may proceed under the burden-shifting method established in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802-03 (1973); *see also Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506-08 (1993).   Ultimately, Plaintiff cannot support his claim under either framework.

While "[d]erogatory remarks may in some instances constitute direct evidence of discrimination," Plaintiff must demonstrate that the "remarks upon which [he] relies were related to the employment decision in question." *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 608 (4th Cir.1999) (internal citations omitted) (abrogated on other grounds by *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003)).   Importantly, there must be a nexus between the discriminatory conduct and the employer's adverse employment action in order for the conduct to comprise direct evidence of discriminatory removal.   (*Id.*).

Plaintiff's argument that he received two "Cs" from Dr. Welsh based on racial discrimination is unavailing considering that the grades he received in those two classes concerned his role as a student, *not* as an employee in the internship. Indeed, Plaintiff acknowledges that he served a "dual role" as a student and an employee, and the two "Cs" he received in Dr.

Welsh's classes related to his role as a student and were not connected to any adverse *employment* action. *See, e.g., Stilley v. Univ. of Pittsburgh of Com. Sys. of Higher Educ.*, 968 F.Supp. 252, 261 (W.D.Pa. 1996) ("While recognizing that plaintiff's work on her dissertation is closely related to her work on the ADL Project, the Title VII inquiry must focus only on the employee-employer relationship. . . . All issues pertaining to the completion of plaintiff's dissertation relate to plaintiff's role as a student and not as an employee."). Similarly misplaced is Plaintiff's reliance on the comment from Dr. Welsh on his paper in the Philosophy of Education class to show that the grade received in the class was racially charged. Specifically, Plaintiff uses as evidence of discrimination the following comment from Dr. Welsh on his paper:

> it is founded on the premise that your past was "normal" and "average" and therefore not worth mentioning. If you remember so much share something. The fact that "every family member before [you] had attended [and] graduated college" makes you *unusual*!

(ECF No. 12-3, at 1) (emphasis in original). Plaintiff perceives this comment to have a racial connotation. Plaintiff cannot show that this comment on one paper in a class, written by Dr. Welsh sometime in the spring of 2010, was in any way linked to his dismissal from Morgan State by December 2010. *See, e.g., Sonpon v. Grafton School, Inc.*, 181 F.Supp.2d 494,

499 (D.Md. 2002) ("there has to be a nexus between the offensive remark and Grafton's decision not to promote Plaintiff for that remark to comprise direct evidence of discriminatory discharge."); *O'Connor v. Consol. Coin Caterers Corp.*, 56 F.3d 542, 549 (4th Cir. 1995) (statement made two days prior to the plaintiff's termination that the company needed to "get some young blood" did "not evince an intent to discharge an older employee"); *E.E.O.C. v. CTI Global Solutions, Inc.*, 815 F.Supp.2d 897, 907 (D.Md. 2011) ("Where the derogatory statement bears little relation to the contested employment action and is attenuated by time, a plaintiff will likely fail to satisfy the nexus requirement."); *Brewer v. Board of Trustees of the University of Illinois*, 407 F.Supp.2d 946, 978 (C.D.Ill. 2005) ("Plaintiff has not presented any evidence or argument that the communications affected his assistantship."); *Sawyer v. Columbia College*, 864 F.Supp.2d 709, 717 (N.D.Ill. 2012) ("Even when taken in the light most favorable to the Plaintiff, there is no connection between Meegan's alleged actions and the adverse employment decision. . . . Meegan was a security guard and was not responsible for the decision to terminate and suspend [p]laintiff.").

Plaintiff also argues in the opposition to the motion for summary judgment that he:

13

> provided email exhibits documenting that
> defendant Benjamin Welsh, a white Caucasian
> male who spoke of being "white" and his
> "whiteness" in casual conversations, as part
> of class discussions, and on many occasions
> in the internship, in courses, in private
> employee-employer discussions between
> defendant and Plaintiff and in the class
> defendant spoke racially charged hatred
> against blacks, black institutions, and
> those attending those institution.

(ECF No. 36-1, at 7).  Plaintiff has provided multiple email exchanges between him and Dr. Welsh and other administrators at Morgan State, but none of them reflect any comments made by Dr. Welsh (or anyone else) on the basis of race.  Plaintiff offers generalized allegations, but does not delineate any specific instances when Dr. Welsh used *racially charged* language in conversations with him during his internship, in class, or outside of class.  For instance, when Plaintiff opted to go ahead with the grade appeal instead of revising his paper for the internship, he cited, among other things, an allegedly offensive email from Dr. Welsh to Plaintiff, stating that "[i]t is in your best interest to keep your mouth shut from now on and not try to change the goals and objectives again." (ECF No. 12-4, at 11).  This remark has no discernable racial connotation and Plaintiff does not argue as much.  There are no supporting affidavits or any other documentation to give credence to Plaintiff's allegations.

Moreover, Plaintiff has not shown a causal connection between any racial comments made by Dr. Welsh (which Plaintiff does not even specify) and his dismissal. Plaintiff's grade appeal, academic probation, and dismissal were handled by Glenda Prime, the Chairperson of Advanced Studies Leadership & Policy at Morgan State, and other faculty members; there is no indication that Dr. Welsh either served as the sole decision-maker or played any role in this process. Although Dr. Welsh recommended the two "C" grades and an "incomplete" in the internship, the internship grade was downgraded to an "F" by an independent committee that reviewed the paperwork Plaintiff submitted and assessed Plaintiff's academic performance and eligibility to remain in the graduate program.[5] (*See* ECF No. 36-2, email from Glenda Prime ("Please be advised that *the department* has completed the grade appeal process . . . the department has decided to uphold the grades assigned to you.")

---

[5] Dr. Welsh submitted an affidavit in support of the motion for summary judgment stating that he was not the internship course instructor, therefore he could only *recommend* a grade to the instructor of record, Dr. Warren Hayman, the Interim Coordinator, Urban Educational Leadership. (ECF No. 34-2 ¶ 5). Dr. Welsh avers that "[w]hen a last minute change in goals and objectives became necessary, [he] recommended to Dr. Hayman that Mr. Stewart receive a grade of 'Incomplete' because he was not able to complete the internship satisfactorily in the time allowed." (*Id.*). Dr. Hayman, an African-American male, then awarded Mr. Stewart an "incomplete" in the internship. (*Id.* ¶ 6). Plaintiff argues in the opposition to the motion for summary judgment that he was not aware that Dr. Warren Hayman was African American; Plaintiff's awareness of Dr. Hayman's race is irrelevant, however.

(emphasis added))).   Moreover, Warren Hayman, an African-American male, was the instructor of record for the internship, and Dr. Welsh could only recommend the "incomplete" in the internship.   (ECF No. 34-2 ¶ 5).   Plaintiff has provided no supporting evidence that any of these other individuals engaged in discriminatory conduct in connection with Plaintiff's academic probation and subsequent dismissal, assuming such acts could even be regarded as adverse employment actions.   Plaintiff cannot rely on generalized allegations of discrimination to defeat a properly-supported motion for summary judgment.

Absent direct evidence, Plaintiff must prove his case circumstantially, using the pretext framework established in *McDonnell Douglas*.   Under this framework, Plaintiff must first demonstrate a *prima facie* case of discriminatory discharge, the contours of which will vary depending on the factual circumstances.   *McDonnell*, 411 U.S. at 802 n. 2.   Where a position is unique to Plaintiff such as here, Plaintiff asserting discriminatory discharge must show that: (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) he was performing at a level that met his employer's expectations at the time of the adverse employment action; and (4) he was terminated under circumstances that give rise to an inference of discrimination.   *Burdine*, 450 U.S. at 253-54.   It is undisputed that Plaintiff, an African-American

16

male, meets the first element.  Even assuming that his dismissal from Morgan State constituted an adverse employment action, Plaintiff has not satisfied the third and fourth elements of the *prima facie* case.[6]

Plaintiff has provided no evidence – just his own subjective beliefs - that his performance in the internship met Morgan State's legitimate expectations, nor has he produced evidence that those "expectations" were not legitimate.  *See, e.g., Dzaringa v. Sears, Roebuck & Co.*, Civ. Action No. DKC 12-1609, 2013 WL 5634346, at *5 (D.Md. Oct. 15, 2013) ("Plaintiff's own view of his performance is irrelevant.").  As Defendant argues, at first, Mr. Stewart chose to research public grants for the internship, but later changed topics to researching and writing an article.  It appears that Plaintiff later agreed to write a book review, but Dr. Welsh found weaknesses in Plaintiff's work product and gave Plaintiff an opportunity to

---

[6] Notably, Plaintiff was not terminated from his semester-long internship.  His dissatisfaction stems from receiving an "incomplete" – and ultimately an "F" – not from being unable to finish the internship.  He was given an opportunity to complete the requirements of the internship – which Dr. Welsh warned him may entail preparing several drafts of the book review – but Plaintiff declined, opting to appeal the "incomplete" instead. Consequently, it is doubtful that Plaintiff can even prove an adverse employment action in connection with his internship, which is what he regards as his "employment" relationship with Morgan State.  Viewing the allegations in the light most favorable to Plaintiff and assuming he has shown an adverse employment action, as will be seen, Plaintiff's discriminatory discharge claim fails to satisfy the other two prongs of *McDonnell Douglas*.

cure the deficiencies.   (ECF No. 12-4, at 19).   The record reflects that Dr. Welsh gave Plaintiff an "incomplete" for failing timely to complete the internship requirements; the "incomplete" simply allowed Plaintiff extra time to complete his required work.   In an email dated June 17, 2010, Dr. Welsh stated:

> Do you want to work together to revise your papers or not?  If yes, then we need to put these feelings behind us. . . . All I can tell you about the internship grade is that it is common practice for Dr. Hayman to give internship students incompletes when the work is not completed in time to submit a grade.  The book review needs work as well . . . do you want to let that grade go along with the other two?

(*Id.* at 22).   Plaintiff replied on June 18, 2010 that he would revise the papers. (*Id.* at 23).   Dr. Welsh then responded on June 19, 2010:

> Very well, then.   I assume you understand that I am not going to tell you what is wrong with them.   I expect you to at least generate questions and theories as to why you got the grade that you got, and to share those questions and theories with me when we meet.

(*Id.*).   After this email from Dr. Welsh, on June 21, 2010, Plaintiff wrote to Dr. Glenda Prime, the Chairperson of Advanced Studies Leadership & Policy at Morgan State, stating that he changed his mind about revising the papers and that he would be appealing his two grades of "C" and an "I" in the internship.

The appeals committee - which did not include Dr. Welsh - confirmed that Plaintiff failed to meet his internship requirements and changed his grade from an "incomplete" to an "F." *See, e.g., Dzaringa*, 2013 WL 5634346, at *5 ("It is undisputed that [plaintiff] failed to follow Defendant's policies, and the only evidence he provides to demonstrate Defendant's nefarious motive are some stray remarks by Pressley and the general feeling that Pressley was not giving him the autonomy and respect he thought his position deserved. Such is the 'scintilla of evidence in support' that is insufficient for the nonmoving party on a motion for summary judgment."); *Nigro v. Virginia Commonwealth Univ. Coll. of Virginia*, 492 F.App'x 347, 360 (4th Cir. 2012) (Table opinion) ("Since we must view the faculty's determination that Nigro performed unsatisfactorily with considerable deference,[] and the record contains ample evidence that her performance in some rotations was deficient, we cannot conclude that she has met her burden of showing that she performed her job satisfactorily."). Moreover, Plaintiff has not produced evidence demonstrating racial motivation, failing to satisfy the fourth element of a *prima facie* Title VII claim.

Even assuming Plaintiff has made a *prima facie* Title VII claim, Defendants have produced a legitimate non-discriminatory reason for Plaintiff's dismissal from Morgan State.

Specifically, Defendant argues that the decision to dismiss him was a purely academic decision based on an assessment of Plaintiff's work. (ECF No. 34, at 7). As discussed above, Plaintiff was given an "incomplete" in the internship because he changed topics with five weeks left and then failed timely to complete the internship requirements outlined by Dr. Welsh. Moreover, he refused to make changes to the book review, even after being offered several chances to do so. Plaintiff attributes racial motive to Dr. Welsh only. Several other faculty members, however – including Dr. Glenda Prime and Dr. Warren Hayman – sat on the committee that reviewed whether the "incomplete" (and his two other "C" grades) were justified, and concluded that they were.[7] *See, e.g., Herron v. Virginia Commonwealth Univ.*, 366 F.Supp.2d 355, 368 (E.D.Va. 2004) ("Simply stated, the Plaintiff was failing her clinical rotation and the evidence is clear that although she was repeatedly apprised of her shortcomings by clinical supervisors, she refused to listen to or integrate their feedback."). Plaintiff has not come forward with any evidence that Morgan State's reasons justifying his academic probation and dismissal were

---

[7] Moreover, the program requirements for the Ed.D program indicate that "[a] student who receives two C's will be dismissed from the [Ed.D] program." (ECF No. 12-3, at 8). Plaintiff's receipt of two grades of "C" in the spring of 2010, already justified dismissal according to the program requirements.

pretextual.   Accordingly,  summary  judgment  will  be  granted  to
Morgan State on the race discrimination claim.

### 3.   Retaliation

Plaintiff's   retaliation   claim   fares   no   better.   To
establish a *prima facie* retaliation claim, a plaintiff must show
that: (1) he engaged in a protected activity; (2) his employer
acted  adversely  against  him;  and  (3)  the  protected  activity  was
causally connected to the adverse action.   *See Holland v. Wash.*
*Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007).   Plaintiff does
not explicitly identify the basis for his retaliation claim, but
it  appears  that  Plaintiff  believes  that  the  "incomplete"  in  his
internship   was   changed   to   an   "F"   "when   Plaintiff   filed
complaints and grade appeal."   (ECF No. 36-1, at 5).

There  are  several  problems  with  Plaintiff's  argument.
First,  filing  a  grade  appeal  is  not  protected  activity.   The
record  reflects  that  Plaintiff  indicated  to  Dr.  Glenda  Prime
that he wanted to appeal the grades because he thought Dr. Welsh
belittled  him  and  he  also  found  offensive  a  remark  from  Dr.
Welsh  to  keep  his  mouth  shut.   (ECF  No.  12-4,  at  24-25).   There
is  no  indication  that  Plaintiff  asserted  race  discrimination  and
that  his  "incomplete"  was  downgraded  to  an  "F"  as  a  result  of
his   discrimination   complaint.   Moreover,   in   his   complaint,
Plaintiff  indicates  that  his  "grade  was  changed  to  an  'F'  in  the
externship/internship  .  .  .  after  he  filed  a  complaint  with  the

21

U.S. Department of Education." (ECF No. 24, at 13). Even assuming Plaintiff could prove an adverse employment action, his complaint avers that he filed a complaint with multiple agencies, including the Department of Education, in *January 21, 2011*, by which point the decision to dismiss had already been made. (ECF No. 24, at 12). Accordingly, summary judgment will be granted for Morgan State as to the retaliation claim as well.

### B. Breach of Contract

Plaintiff also brings a breach of contract claim.[8] Plaintiff argues that Defendants created a contract when Dr. Welsh signed the Statement of Agreement at the commencement of the internship and that Morgan State breached this contract by giving him an "incomplete" and then an "F" in the internship after Plaintiff allegedly completed all of the internship requirements.

"To prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." *Jaguar Land Rover North America, LLC v. Manhattan Imported Cars, Inc.*, 738 F.Supp.2d 640, 649 (D.Md. 2010) (*citing Taylor v. NationsBank, N.A.*, 365 Md. 166, 175 (2001)). When determining whether a contract exists, "the hallmarks of a

---

[8] Plaintiff's breach of contract claim for monetary damages (as opposed to injunctive relief) was dismissed by prior memorandum opinion. (*See* ECF No. 20).

binding contract are 'an offer by one party and an unconditional acceptance of that precise offer by the other.'" *Estrin v. Natural Answers, Inc.*, 103 Fed.Appx. 702, 704 (4th Cir. 2004) (*quoting Lemlich v. Board of Trs.*, 282 Md. 495, 385 A.2d 1185, 1189 (1978)).   In forming a contract, there must be consideration, where a performance or promise is bargained for in exchange for a return performance or return promise. Restatement (Second) of Contracts § 224 (1981).   If a contract is found to exist, Maryland applies the objective theory of contracts, where

> [A] court is to determine from the language
> of the agreement, what a reasonable person
> in the position of the parties would have
> understood the contract to mean at the time
> the contract was entered into; when the
> language of the contract is plain and
> unambiguous, there is no room for
> construction as the courts will presume that
> the parties meant what they expressed.

*Id*. (*citing Mathis v. Hargrove*, 166 Md.App. 286, 319 (2005)).

Defendants contend that the Statement of Agreement is an outline of the goals and objectives of Plaintiff's internship, which is not a contract because it was never signed by a properly authorized state official.   (ECF No. 34, at 8-9). Defendants also argue that even if the Statement of Agreement is deemed a binding contract, it was no longer in effect when Plaintiff changed his research topic with just five weeks remaining in the semester.  (*Id*. at 9).  Plaintiff counters that

the Statement of Agreement was an employment contract, signed by Dr. Welsh, an "authorized representative of Morgan State University." (ECF No. 36-1, at 14). Plaintiff further argues that it was Dr. Welsh who initiated changes to the Statement of Agreement, making Defendants liable for breaching the contract.

The Statement of Agreement, which outlines the internship objectives, is not a contract. The Statement of Agreement does not address any consideration or obligations owed by Morgan State. (*See* ECF No. 12-2, at 2). The language of the Statement of Agreement only mentions benefits that Plaintiff would receive from his own research efforts and is more akin to an independently-created syllabus approved by a teacher. Even if the Statement of Agreement constituted a contract between Morgan State and Plaintiff, however, its plain terms do not require Morgan State or Dr. Welsh to award a satisfactory grade in exchange for Plaintiff's work, irrespective of Dr. Welsh's assessment of Plaintiff's work. Plaintiff's generalized allegation that the contract was breached when he received an "incomplete" and an "F" is insufficient to defeat summary judgment. Accordingly, summary judgment will be granted to Defendants on the breach of contract claim.[9]

---

[9]  Plaintiff asserts in his complaint that "Benjamin Welsh wrote emails to Troy Stewart showing extreme hostility towards Troy Stewart before final grades were to be submitted and after final grades were submitted." (ECF No. 24, at 9). Plaintiff

C.      Section 1983 Claims

Defendants argue that the Section 1983 claims should be dismissed because there was no constitutional violation. Section 1983 provides a cause of action against any person, who acting under color of state law, deprives another of his federal rights.   42 U.S.C. § 1983.   Although the basis of Plaintiff's Section 1983 claims is also not entirely clear, in his complaint, Plaintiff asserts that "Morgan State University's act of dismissing Troy Stewart's complaint violated [his] . . . First and Fourteenth Amendment rights." (ECF No. 24, at 8).   In the opposition, Plaintiff argues that "being unfairly graded and denied his right to appeal discriminatory grades, caus[ed] irreparable harm to his right to a public education under the Equal Protection Clause of the U.S. Constitution under 42 U.S.C. § 1983." (ECF No. 36-1, at 5).   The Constitution, however, is silent on the right to education and the Supreme Court has declined to recognize education as a fundamental federal right guaranteed by the Constitution. *See San Antonio Ind. School Dist. V. Rodriguez*, 411 U.S. 1 (1973).   Instead, the Supreme

---

asserts that "Benjamin Welsh sent these emails and correspondence simultaneously to Chairperson Glenda Prime and Interim Coordinator Warren Hayman. . . . When Benjamin Welsh sent these simultaneous emails he breached a contract with Troy Stewart." (*Id.*).   Plaintiff includes legal conclusions, but again fails to include any facts indicating how sending these emails constituted a contract breach, assuming a contract between Plaintiff and Morgan State existed.

Court has explained that education is the "most important function of state and local governments." *Brown v. Bd. of Educ.*, 347 U.S. 483, 493 (1954). Plaintiff has not provided any proof that Defendants committed a constitutional violation. Moreover, Plaintiff's argument that he was denied the right to appeal discriminatory grades is disingenuous considering that he did appeal his grades to Glenda Prime. His dissatisfaction with the outcome of that appeal does not give rise to a Section 1983 violation. Accordingly, summary judgment will be granted as to the 1983 claims.

## IV.  Conclusion

For the foregoing reasons, the motion for summary judgment filed by Defendants will be granted. Defendants' motion to strike will be denied. A separate order will follow.


_____ /s/ _____
DEBORAH K. CHASANOW
United States District Judge